UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MACKENZIE SCHUTTER,

    Plaintiff,

v.

HAROLD ZEIGLER AUTO
GROUP, INC.,

    Defendants.
_____/

Case No. 1:18-CV-47

HON. GORDON J. QUIST

### **OPINION**

Plaintiff, Mackenzie Schutter, has sued her former employer, Harold Zeigler Auto Group, Inc., alleging that Zeigler violated the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, and discriminated against her on the basis of her pregnancy, in violation of the Michigan Elliott-Larsen Civil Rights Act (ELCRA), M.C.L. § 37.201 *et seq.*, when it eliminated her position as its corporate marketing manager.

Zeigler has moved for summary judgment on both claims. The motion is fully briefed, and the Court heard oral argument on the motion on August 27, 2019.

For the following reasons, the Court will grant the motion and dismiss Schutter's amended complaint with prejudice.

### **I. FACTS**

**A.**     **Schutter's Employment with Zeigler**

Zeigler is in the retail automobile sales business and has 26 retail locations throughout southwest Michigan, northern Indiana, New York, and Illinois. (ECF No. 48-9 at PageID.329.)

Zeigler first employed Schutter in March 2016, when she accepted the position of marketing manager for Zeigler's JD Byrider franchises. Schutter's salary in that position was $45,000, plus a guaranteed bonus of $5,000 during her first year of employment. (ECF No. 48-5.) Schutter's responsibilities included creating a new website, posting pictures of vehicles to the website, working on the company's social media presence, and performing other marketing functions. (ECF No. 48-4 at PageID.253.) She also assisted with recruiting at the JD Byrider locations, including publishing job postings, reviewing resumes, and sitting in on interviews. (*Id.* at PageID.251.)

In late 2016 or early 2017, Ethan Sivewright, Schutter's supervisor at JD Byrider, recommended to Zeigler's president, Aron Zeigler, that Zeigler eliminate Schutter's marketing position at JD Byrider. (ECF No. 48-9 at PageID.330.) Aron Zeigler had been considering creating a position at Zeigler's corporate office that would perform entry-level marketing tasks for the corporate office. After consulting with Sivewright and Mike Van Ryn, Zeigler's director of talent development, Aron Zeigler decided to create the position of corporate marketing manager and to offer it to Schutter. (*Id.*) Schutter understood that the new position was "experimental," as it had not existed previously, and that Aron Zeigler did not know whether the position would work out. (ECF No. 48-4 at PageID.258–59.) Schutter accepted the position, which paid the same base salary as her previous position. Schutter's responsibilities in her new position were to be split among Zeigler's auto group, its JD Byrider franchises, and Zeigler Motorsports, with each division or entity paying assigned percentages of her salary. (ECF No. 48-9 at PageID.330.) Aron Zeigler was Schutter's direct supervisor, although her job responsibilities were similar to those of her former position. (*Id.*) Because Schutter now was also eligible for bonuses for recruiting new Zeigler employees in her new position, she began attending the regular recruiting department team meetings that Van Ryn held.

**B.      Schutter's Performance Shortcomings**

Schutter's performance in her new position did not go well, at least from Aron Zeigler's perspective. From the beginning, she failed to prioritize her job assignments and, consequently, did not complete some of them on time. For example, one of the first assignments Aron Zeigler gave Schutter was to put accurate and high-resolution photos of Zeigler dealerships onto Zeigler's corporate website. He informed Schutter that this project was the top priority and that he wanted it completed by the end of February 2017. (*Id.*; ECF No. 48-4 at PageID.268.) When Aron Zeigler followed up with Schutter at the end of February regarding the status of the project, Schutter told him that it was not yet completed and that she had been busy performing other tasks for Motorsports. When Aron Zeigler followed up with Kevin Galer, Schutter's supervisor at Motorsports, Galer said that when he had asked Schutter to perform tasks for Motorsports, she told him that she was too busy doing work for the auto group. (ECF No. 48-9 at PageID.331; ECF No. 48-14 at PageID.356.) The project came up again during a meeting on March 6, 2017, in which Schutter asked Aron Zeigler what he wanted her to do with the pictures on the website. Schutter's question indicated to Aron Zeigler that Schutter had forgotten the meeting they had in early February in which they had first discussed the project. Aron Zeigler asked Schutter if she remembered the meeting, and Schutter admitted that she had "dropped the ball" and said she would get on the project immediately, promising to complete it by the end of March. Aron Zeigler told Schutter that her job performance on the project was unacceptable. She apologized and indicated that she would improve her performance. (ECF No. 48-9 at PageID.331.)

The two met again on April 17, 2017, at which time Schutter said that she still had not completed the initial project. Aron Zeigler assigned Schutter a new project of writing a company history to put under the "history" tab on the company's website, to be completed in 30 days. At the

3

conclusion of the meeting, Aron Zeigler told Schutter that he had created Schutter's position to accomplish specific functions for the auto group and that thus far, Schutter had not met his expectations and he was contemplating eliminating the position. (*Id.* at PageID.331–32.)

On June 9, 2017, Schutter emailed Aron Zeigler about the status of her efforts to upload the new dealership photos to the auto group website. She also described delays that she was encountering in creating the description for the history tab on the company's website. Aron Zeigler responded, indicating his displeasure with her progress and reminding her that he had asked her to complete the dealership picture project months ago and had not seen any progress until he had emailed her the day before. Schutter apologized, said that she would reiterate to company vendors that the project was a priority, and committed to reprioritizing her tasks. (*Id.* at PageID.332.)

When asked about her job performance during her deposition, Schutter said that she chose to communicate with Van Ryn rather than with Aron Zeigler but admitted that, in hindsight, she should have sought direction and clarification about her work directly from Aron Zeigler. (ECF No. 48-4 at PageID.256–57.) Schutter believed that communicating directly with Aron Zeigler would have provided her more "clarification" on her job priorities because "he, obviously, got rid of me for a reason and so I would have liked to have known ahead of time what I was doing wrong because I was getting no sense of what I was doing wrong." (*Id.* at PageID.276–77.) Schutter also admitted that, at times, she felt distracted from completing her work. (*Id.* at PageID.278.)

**C.    Schutter Learns She is Pregnant**

Schutter learned that she was pregnant around the time she accepted the new corporate marketing manager position. (ECF No. 49-1 at PageID.437.) She shared this information with Van Ryn on or about March 7, 2017. (*Id.* at PageID.438.) Schutter never discussed her pregnancy with Aron Zeigler. (ECF No. 48-4 at PageID.270.) Schutter claims that "[w]ithin a few weeks" after she

4

informed Van Ryn of the pregnancy, Van Ryn told her that when he informed Aron Zeigler that Schutter was pregnant, Aron Zeigler commented that the pregnancy was "poor timing," said that "[a]t least she can get us through the busy season," and asked, "[i]s she [Schutter] the working type?" Van Ryn said that he responded, "Yeah, I think so." (ECF No. 49-1 at PageID.438.) Schutter claims that she and other employees considered Aron Zeigler's "working type" comment "a joke" that she did not take seriously.[1]  (ECF No. 48-4 at PageID.290.)

Soon after Schutter informed Van Ryn that she was pregnant, she inquired about FMLA leave because she "was curious on how it worked, . . . what paperwork [she] needed and how soon they needed it." (ECF No. 48-4 at PageID.293.) Schutter did not actually request leave at that point. (*Id.*) Schutter's plan was to take two-to-six weeks off work for the birth, for which she would use the two-to-three weeks of vacation time that she had accrued and then go on unpaid leave, if necessary. (*Id.* at PageID.296.)

**D.     Aron Zeigler Decides to Eliminate Schutter's Position**

Following his June 9, 2017, email exchange with Schutter, Aron Zeigler met with Schutter and indicated that he didn't see a need for the corporate marketing manager position and that he would most likely eliminate it. He also told her that if he decided to eliminate the position, he would offer her another position within the company if one were available. (ECF No. 48-9 at PageID.332.) Aron Zeigler ultimately decided to eliminate the position because he believed that it was not adding value to the company and because of Schutter's lackluster job performance. (*Id.* at PageID.333.) However, he decided to offer Schutter a recruiting position with the company that had recently become available.

---

[1] Both Van Ryn and Aron Zeigler deny discussing Schutter's pregnancy with each other and Aron Zeigler denies making the alleged comments about Schutter's pregnancy. (ECF No. 48-3 at PageID.239; ECF No. 48-9 at PageID.333.) Regardless, for purposes of Zeigler's motion for summary judgment, the Court must accept Schutter's evidence as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

On June 28, 2017, Van Ryn and Dan Scheid, Zeigler's CFO, met with Schutter to notify her that her corporate marketing position was being eliminated and to offer her the recruiting position. The following day, June 29, Van Ryn met with Schutter and provided her additional details regarding the recruiter position, including that it paid a base annual salary of $25,000, along with various bonuses depending upon the type of position the recruiter filled. Schutter met with Van Ryn again on July 5, 2017. During their meeting, they discussed details of the recruiting position. Schutter also asked Van Ryn about the timing of the elimination of her job—after Aron Zeigler made his alleged comments (which occurred almost four months earlier)—but Van Ryn said nothing and only shrugged his shoulders. (ECF No. 49-1 at PageID.439–40.)

On July 10, 2017, Schutter sent an email to Van Ryn and Scheid with a counteroffer stating that she would accept the recruiter position on the condition that she receive a $2,500 bonus and an increase in annual base salary of $40,000. Zeigler declined and withdrew the recruiting position offer. Zeigler has not hired anyone to fill Schutter's former position.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. DISCUSSION

**A.     FMLA Claim**

A plaintiff may pursue two different theories of liability under the FMLA. *See Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003). The "entitlement" or "interference" theory is based upon the substantive rights created by the FMLA. *Arban*, 345 F.3d at 401. An employer is liable under this theory if it interferes with an employee's FMLA-created rights to medical leave or to reinstatement following the leave. 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title."). To prevail on this type of claim, an employee need only show that she was denied an entitlement under the FMLA. *Hoge*, 384 F.3d at 244. The employer's intent is irrelevant to such a claim. *Id.*

The second type of FMLA claim is a "retaliation" or "discrimination" theory. *See* 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title."); *see also* 29 C.F.R. § 825.220(c) (prohibiting employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions").

**1.     Interference Theory**

In order to establish an interference claim, a plaintiff must show that: (1) she was an eligible employee; (2) the defendant is a covered employer; (3) she was entitled to leave under the FMLA; (4) she gave the defendant notice of her intent to take leave; and (5) the defendant denied her FMLA benefits or interfered with FMLA rights to which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

There is no dispute that Schutter can establish the first three elements of an interference claim. Her claim fails, however, on the fourth and fifth elements because she never requested leave. "[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). An employee need not "expressly assert h[er] right to take leave as a right under the FMLA." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm*, 149 F.3d at 523 (internal quotation marks and alteration omitted). If the employee makes the need for leave known, "[t]he employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). Where the need for leave is foreseeable, as in the case of a pregnancy, the employee must provide "at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c); *see also Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014) (noting that duration of leave is important because "many injuries and illnesses will not require the full allotment of [FMLA] time off"). Moreover, if the employer has a leave policy, the employee must "comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d).

Zeigler argues that Schutter never actually requested leave because her questions to Zeigler's human resources office were nothing more than a general inquiry about the availability of FMLA and the procedure for requesting it. Zeigler argues that the instant case is similar to *Keogh v. Concentra Health Services, Inc.*, 752 F. App'x 316 (6th Cir. 2018), in which the Sixth Circuit concluded that the plaintiff failed to alert the defendant that he was requesting leave. In *Keogh*, the

8

plaintiff "began to look into FMLA leave for his back [pain]" about a month prior to his termination. *Id.* at 320. The plaintiff characterized his actions as "still investigating" the possibility of FMLA leave. *Id.* The court concluded that the plaintiff failed to meet the notice requirement because he "never passed the 'investigating' stage regarding any FMLA request." *Id.* at 322. The court observed that "[m]ere questions about possible leave and adjustment of working hours, without other information alerting [the employer] to plaintiff's possible intent to take such leave, are insufficient." *Id.* (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005)). Rather, the court noted, the plaintiff failed to alert the employer that "there was any such *request* at all." *Id.* (italics in original).) Finally, the court noted that although the plaintiff knew that he was required to address all FMLA requests to the employer's third-party vendor, he failed to follow the employer's policy. *Id.*

Here, like the plaintiff in *Keogh*, Schutter "never passed the 'investigating' stage regarding any FMLA request." *Id.* Schutter admitted that she asked questions to human resources personnel because she "was curious on how it worked" and that she did not actually request leave that day. (ECF No. 48-4 at PageID.293.) Schutter's general inquiry into the FMLA process, without more, was insufficient to put Zeigler on notice that she was actually requesting leave. *See Wright v. Marshal Mize Ford, Inc.*, No. 1:09-cv-139, 2010 WL 3843780, at *7 (E.D. Tenn. Sept. 27, 2010) (concluding that the plaintiff's statements that he "most likely" would "have to take six to eight weeks" for cancer surgery were insufficient to give notice of the plaintiff's intent to take leave). Schutter's admission that she asked general questions and did not actually request leave is fatal to her interference claim. Moreover, it is undisputed that Schutter failed to comply with Zeigler's procedures or policies in its Employee Handbook for requesting FMLA leave. (ECF No. 48-25 at PageID.407.) *See Cundiff v. Lenawee Stamping Corp.*, 597 F. App'x 299, 300 (6th Cir. 2015) ("If

9

the employee does not comply with [the employer's] requirements, then the FMLA does not give him the right to take leave.").

Schutter offers scant discussion regarding notice, stating only that the "various communications concerning her pregnancy . . . with Mike Van Ryn and human resources" suffice to establish notice. (ECF No. 49 at PageID.433.) But, as noted above, Schutter admitted in her deposition that she only asked questions about how FMLA leave worked and that she did not request leave when she spoke to the human resources personnel. The fact that she told Van Ryn or anyone else that she was pregnant cannot be construed as a notice of intent to take FMLA leave, particularly because Schutter planned to use her accumulated two-to-three weeks of paid vacation before resorting to FMLA leave and there was no indication early on that Schutter would actually need more than two-to-three weeks off for the birth. Last, Schutter does not dispute that she did not comply with Zeigler's procedure for requesting leave.

Because Schutter failed to request FMLA leave, her interference claim fails on the fifth element as well because she cannot show that she was denied FMLA benefits to which she was entitled.

### 2. Retaliation Claim

A plaintiff may prove an FMLA retaliation claim either through direct or indirect evidence. *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 432 (6th Cir. 2014). Schutter does not present direct evidence of FMLA retaliation; instead, she argues her claim under a circumstantial evidence framework. Under that framework, a plaintiff must show that:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2012)).  If the plaintiff establishes a prima facie case, "the burden shifts to the employer to proffer a legitimate, nondiscriminatory rationale for discharging the employee." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

Schutter fails to establish a prima facie case for several reasons.  First, as noted above, Schutter fails to show that she actually requested leave.  This deficiency is also fatal to Schutter's retaliation claim.  *Keogh*, 752 F. App'x at 323–24.

The Court also concludes that Schutter fails to show that she suffered an adverse action.  In the Sixth Circuit, an adverse employment action is "a materially adverse change in the terms of . . . employment."  *White v. Burlington N. & Santa Fe R.R. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (en banc) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)).  Adverse action includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id.* at 798 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998)) (internal quotation marks omitted).  Conceivably, Zeigler's elimination of Schutter's corporate marketing manager position could constitute an adverse action.  *See Keaton v. Lucent Techs., Inc.*, No. C2-03-890, 2005 WL 1396941, at *9 (S.D. Ohio June 13, 2005) ("The elimination of Keaton's job could constitute an adverse employment action.").  However, Schutter's employment did not end with the job elimination; instead, Zeigler offered Schutter another position in the company that would have allowed her to continue her employment.  It is true that the terms of the recruiter position were different than Schutter's corporate marketing manager position in that the base salary was $20,000 less and she would have spent most, if not all, of her time recruiting. Yet, Zeigler has shown that the $25,000 base salary it offered Schutter was consistent with what it

pays its other recruiters and that Schutter had the potential in the recruiter position to earn as much, if not more, than she made in her corporate marketing manager position. (ECF No. 48-3 at PageID.240; ECF No. 48-22 at PageID.386 (showing individual and average recruiter wages for 2017–19).) Thus, in the Court's judgment, Zeigler's offer to Schutter of a combination salaried/commissioned position, in which she had the potential to earn more, in place of her eliminated salaried position was not an adverse employment action. *See Russell v. CSK Auto Corp.*, 739 F. App'x 785, 795–96 (6th Cir. 2018) (holding that moving the plaintiff from an assurance pay system to a commissioned based system did not amount to constructive discharge in violation of the FMLA). Under Sixth Circuit law, Schutter was required to at least make a real attempt to perform the recruiter position before concluding that she would earn less than her former position. *See Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (noting that "[a]n employee who quits a job in apprehension that conditions may deteriorate later is not constructively discharged"). Finally, that Schutter would have devoted her time exclusively to recruiting does not render Zeigler's action adverse. Schutter was familiar with recruiting at Zeigler, as she attended regular recruiting team meetings and had some recruiting experience as part of her former J.D. Byrider position.

Schutter's claim fails for the additional reason that she cannot establish a causal connection between her FMLA activity and the alleged adverse action. First, as noted above, Schutter never requested leave and, therefore, did not engage in FMLA activity. Moreover, even if Schutter could be deemed to have made an FMLA request (which the evidence shows she did not), the evidence, which is undisputed, shows that Aron Zeigler—who made the decision to eliminate Schutter's marketing manager position—was unaware that Schutter had made an FMLA request because she never discussed leave with Aron Zeigler. *Cf. Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866–67 (8th Cir. 2006) (concluding that the plaintiff presented sufficient evidence of causation to support the

jury's finding of a causal connection where there was evidence that the plaintiff's direct supervisor, Leedom, told the plaintiff she would lose her job if she continued to use FMLA leave and Van Walbee, the ultimate decisionmaker, testified that Leedom recommended the plaintiff's termination and Van Walbee could not recall whether he and Leedom discussed the plaintiff's use of FMLA leave). Schutter fails to support a causal connection with evidence that Van Ryn or Aron Zeigler were aware that Schutter intended to take FMLA leave.[2]

Even if Schutter could establish a prima facie case, she fails to show that Zeigler's legitimate nondiscriminatory reason is pretext. A plaintiff may demonstrate pretext by showing "that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). Zeigler has shown that Aron Zeigler eliminated Schutter's marketing manager position because of her poor performance and because he believed that the position did not add value to the company. Schutter counters that she can show pretext because "the reasons offered by the defendant to eliminate her position are shifting, conflicting, or false." (ECF No. 49 at PageID.435.) Schutter argues that during her June 28, 2017, meeting with Van Ryn and Scheid, the reasons given for eliminating her position had nothing to do with her performance. This argument fails, however, because it is undisputed that Aron Zeigler, alone, was the decisionmaker and he consistently stated that he eliminated Schutter's position due to her performance and the position's lack of value to the company. *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 (6th Cir. 2010) (noting that "Pease [the decisionmaker]

---

[2] Schutter testified that, in addition to Van Ryn, she told numerous coworkers at Zeigler that she was pregnant. (ECF No. 48-4 at PageID.269–70.) Nonetheless, other than her brief inquiry to Zeigler's human resources office in March 2017, Schutter fails to present any evidence that she told anyone at Zeigler that she intended to take unpaid leave. This is likely because the pertinent events occurred early in Schutter's pregnancy and she, herself, had not decided whether she needed time off beyond the paid accrued vacation time that she planned to use.

consistently stated that productivity was a factor in Schoonmaker's layoff, as well as the fact that he did not perceive her as a team player"). Schutter offers no evidence that Van Ryn or Scheid had any input into the decision to eliminate the corporate marketing manager position. Thus, Schutter fails to show pretext through a shifting rationale by the decisionmaker.

**B. Pregnancy Discrimination**

To establish a pregnancy discrimination claim under ELCRA, a plaintiff may rely either on direct evidence of discrimination or circumstantial evidence using the *McDonnell Douglas* burden-shifting approach.[3] *Scott v. Valley Elec. Contractors, Inc.*, No. 15-cv-14281, 2016 WL 7100250, at *8 (E.D. Mich. Dec. 12, 2016) (citing *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 132, 666 N.W.2d 186, 192 (2003)). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).

Schutter argues that Aron Zeigler's comments about the "poor timing" of Schutter's pregnancy and whether she was "the working type" who would "get us through the summer months" are direct evidence of discrimination. Contrary to Schutter's argument, these statements are more properly characterized as "stray remarks," or comments that do not evince discriminatory animus. Factors to consider in determining whether comments are so-called "stray remarks" include:

> (1) whether they were made by a decision maker or an agent within the scope of his employment, (2) whether they were related to the decision-making process, (3) whether they were vague and ambiguous or clearly reflective of discriminatory bias, (4) whether they were isolated or part of a pattern of biased comments, and (5) whether they were made close in time to the adverse employment action.

*Sniecinski*, 469 Mich. at 136 n.8, 666 N. W.2d at 194 n.8 (citing *Cooley v. Carmike Cinemas, Inc.*,

---

[3]Pregnancy claims under ELCRA are analyzed under the same framework as Title VII claims. *Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 482 n.2 (6th Cir. 2013).

14

25 F.3d 1325, 1330 (6th Cir. 1994), and *Krohn v. Sedgwick James, Inc.*, 244 Mich. App. 289, 292, 624 N.W.2d 212, 214 (2001)). Although Aron Zeigler, the decisionmaker, made the alleged comments, there is no evidence that they were related at all to his decision to eliminate the corporate marketing manager position. The comments do not reflect an intention to eliminate Schutter's position or to take any action against her. In fact, Aron Zeigler's question whether Schutter was the "working type" who would "get us through the summer months" reflects that he intended to keep her on as an employee rather than terminate her. In addition, the comments were vague and ambiguous, and Schutter, herself, considered them a joke. Finally, the comments were made almost four months before Aron Zeigler decided to eliminate Schutter's position. *See Scott v. Abercrombie & Fitch Stores, Inc.*, No. 07-14838 2009 WL 10680231, at *4 (E.D. Mich. June 10, 2009) (concluding that the plaintiff's supervisor's statement that she "doesn't know how to deal with pregnant managers" was a stray remark; the plaintiff failed to show that it was related to the termination decision, it was ambiguous, and was made two months before the plaintiff's termination).

Because Schutter has no direct evidence of discrimination, she must establish her case through circumstantial evidence. To do so, Schutter must show that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Tysinger v. Police Dep't of the City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006).

As with the FMLA claim, Zeigler again argues that Schutter cannot show that she was subjected to an adverse employment action. Given that this claim—like the FMLA retaliation claim—depends on the elimination of Schutter's position, the same analysis applies here: Schutter

was not subjected to an adverse employment action because Zeigler offered her another position with the company that provided the potential to earn more than she had previously made.

Schutter's prima facie case of pregnancy discrimination fails for another reason as well. Although Zeigler did not raise the issue, Schutter must show that she was qualified for the position. The Sixth Circuit has held that "to be considered qualified for a position an employee must demonstrate that he or she was meeting the employer's legitimate expectations and was performing to the employer's satisfaction." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000); *see also Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 666 (6th Cir. 2000) (applying rule in pregnancy discrimination case). It is undisputed that Schutter was not meeting Aron Zeigler's legitimate expectations, as she admits that she failed to prioritize her work and complete her projects within the time frame Aron Zeigler set. Aron Zeigler raised these issues with Schutter on several occasions and cited Schutter's poor performance as one of his reasons for eliminating her position.[4]

---

[4] Zeigler also argues that Schutter fails to present evidence establishing a nexus between her pregnancy and Aron Zeigler's decision to terminate Schutter's position. The Court has already concluded that Aron Zeigler's comments were "stray remarks" that did not demonstrate discriminatory animus toward pregnancy. Although the Court need not decide the issue, assuming that Schutter could rely on Aron Zeigler's alleged comments as some evidence of discrimination, some Sixth Circuit cases would provide a basis for Schutter to rely solely on the temporal proximity between Aron Zeigler's comments and his decision to eliminate Schutter's position. *See*, *e.g.*, *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (holding that three months between the plaintiff's request for FMLA leave and her termination sufficed to establish a causal connection). Other cases suggest that the period of time at issue, by itself, may be too long to support an inference of discrimination. *See*, *e.g.*, *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an interference of retaliation."). Regardless, Schutter has nothing more than temporal proximity to establish a nexus. In her response, Schutter refers to another employee, Betsy Gesmundo, who was not pregnant during Schutter's employment and worked on some of the same projects as Schutter but was not terminated. Evidence that a similarly situated employee outside the plaintiff's class was treated better or differently than the plaintiff can tend to show discriminatory or retaliatory intent. *See Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). However, in general, a plaintiff alleging discrimination must show that a comparator is similarly situated to the plaintiff in all respects. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). That is, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* On the other hand, a "plaintiff need not demonstrate an exact correlation," but only that the plaintiff and the comparator are "similar in all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation marks omitted; italics in original). This Schutter has failed to do; she has not shown that Betsy Gesmundo held a similar experimental position, reported directly to Aron Zeigler, or had similar performance issues.

Finally, even if Schutter were able to establish a prima facie case of pregnancy discrimination, Schutter fails to show that Zeigler's legitimate reason was pretext for the reasons stated above with regard to the FMLA claim.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Zeigler's motion for summary judgment and dismiss Schutter's amended complaint with prejudice.

An Order consistent with this Opinion will issue.

Dated:  September 24, 2019             /s/ Gordon J. Quist            
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE